| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **THIRD** |
| | ) | **MEMORANDUM AND** |
| **Vs.** | ) | **RECOMMENDATION** |
| | ) | |
| **ALBERT CHARLES BURGESS.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on the specific direction of the district

court referring all pending motions seeking issuance of subpoenas to the undersigned

for entry of a Memorandum and Recommendation, which includes defendant's  Pro

Se "Request for Subpoena Duces Tecum FRCrP-17(c)-At Government Expense <u>Ex

Parte</u>" (#141) and parts of defendant's Pro Se "Request for Subpoena Duces Tecum

-Rule 17(A)(+(b) FRCrP; Request to the Court" (#150).   Although some of

defendant's pro se requests for subpoenas have been made *ex parte*, which is proper,

the undersigned finds that there is no need to consider such *ex parte* inasmuch as the

materials are not sought for trial, but for purposes of sentencing and, perhaps, sought

in anticipation of post judgment relief.  Further, the court finds that by mixing such

motions with motions that cannot be filed *ex parte*, defendant has misused the *ex parte*

proceeding.  The undersigned will, therefore, carefully consider each request for

issuance of a subpoena at government expense.

## FINDINGS AND CONCLUSIONS

### I.    Background

Defendant was convicted on November 18, 2009, on both counts contained in the indictment lodged in the above captioned matter. In Count One, defendant was charged with possessing materials involving the sexual exploitation of minors, 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2), which carries a penalty of not less than 10 years and not more than 20 years imprisonment and a $250,000.00 fine. In Count Two, defendant was charged with knowingly receiving by computer visual depictions, the production of which involved the use of a minor engaging in sexually explicit conduct, 18 U.S.C. §§ 2252(a)(2) and (b)(1), which carries a penalty of not less than 15 years and not more than 40 years imprisonment and a $250,000.00 fine. Defendant is in custody awaiting sentencing.

After defendant's trial counsel had filed appropriate post-trial motions, defendant filed *pro se* his "Motion to Be Allowed to Be His own Co-Counsel" (#97). The district court denied this motion in its February 19, 2010, Order (#101), but advised defendant that he does have the constitutional right to represent himself. Id., at p. 1. On March 26, 2010, defendant filed his "Motion to Represent Himself" (#104), which the district court referred to the undersigned for disposition. A hearing on such motion was conducted on April 14, 2010, and the court allowed defendant's

request but appointed trial counsel as stand by counsel for defendant. See Order (#111). After defendant filed such motion, but before it was allowed, the Presentence Investigation Report ("PSIR") was filed with the court on April 1, 2010, and the court allowed defendant's *pro se* Motion to Enlarge the time to respond to the PSIR up to an including April 28, 2010. The Final Report from Pretrial Services was filed with the court on June 9, 2010, see Docket Entry # 132, to which defendant has filed further objections. See Docket Entry #146. In considering the instant requests for issuance of subpoenas, the undersigned has reviewed both the Final PSIR and defendant's objections thereto. The court notes, in particular, that defendant has made the following objections which may be relevant to the subpoena requests:

(1)     ¶ 2, a purported expungement Order entered by Honorable James B. McMillian, United States District Judge (now deceased), that concerns the 1979 state court conviction;

(2)     ¶ 2, that there was no state court conviction in 1978 against him in Gaston County, North Carolina;

(3)     ¶ 2, that the 1971 convictions are misdemeanors and "cannot be used for relevant conduct";[1]

---

[1]     The court notes that defendant has numbered two paragraphs as "2."

(4)     ¶ 4, that "[t]he Pennsylvania allegations now include <u>facts</u> which now refute any possibility that the Defendant could have molested any boy there";[2]

(5)     ¶ 9, that the "charges in Henderson County were going to be dismissed for denial of a speedy trial";

(6)     ¶ 10, that the recommended sentence of 30 years to life imprisonment "far exceeds a sentence normally given for this offense"; and

(7)     ¶ 13, "records from Winthrop University are being subpoenaed to prove the P.O. falsified the PSIR."

## II.     Applicable Standards

### A.     Requests for Issuance of Subpoenas by Indigent Defendants

The court has conducted a review of this motion in accordance with Rule 17, Federal Rules of Criminal Procedure.  In pertinent part, Rule 17(b) provides:

> The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and the presence of the witness is necessary to an adequate defense.

---

[2]     Emphasis in the original.

Fed.R.Crim.P. 17(b). The practice in this district has been to require either a brief statement as to the substance of the testimony or a statement as to relevance and materiality of the testimony of the witness.

## B.   Considerations Applicable to Pro Se Defendants

The Sixth Amendment to the United States Constitution provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

U.S. Const. Amend. VI. This right to counsel has been interpreted not only to mean paid counsel of one's own choosing, <u>Wheat v. United States</u>, 486 U.S. 153,(1988), but also to include the right to represent one's self without an attorney. <u>Faretta v. California</u>, 422 U.S. 806, 819 (1975).

Where a defendant is allowed to proceed without assistance of counsel, the court may, as it did here, appoint standby counsel to assist the *pro se* defendant. <u>Id.</u>, at 834, n. 46.

> A standby counsel's job is to assist the defendant in procedural matters with which he may not be familiar and to facilitate a speedy and efficient trial by avoiding the delays often associated with pro se representation.

United States v. Campbell, 874 F.2d 838, 849 (1st Cir.1989).  See also United States v. Bush, 404 F.3d 263, 272 (4th Cir. 2005)(standard applicable to denying a request to proceed pro se where it is clear to the trial court that a defendant is attempting to "manipulate and distort the trial process.")

## III.  Defendant's Pro Se "Request for Subpoena Duces Tecum FRCrP-17(c)-At Government Expense Ex Parte" (#141)

### A.  Clerk of Superior Court of Gaston County

In this request, defendant seeks to have issued a subpoena *duces tecum* to the Clerk of Superior Court of Gaston County, North Carolina, to "[p]roduce all records, indictments, warrants or any other materials relating to criminal charges against Albert Charles Burgess . . . ."  Docket Entry # 141, at ¶ 1.  While the request does not provide a reason for issuance of such a subpoena, the undersigned believes that this request is related to ¶ 2 of his further objections to the Final PSIR, in which he argues that there was no state court conviction in 1978 against him in Gaston County, North Carolina, and that Judge McMillan entered an order expunging the 1979 convictions.

The court has  closely reviewed the Final PSIR for any information concerning any "conviction" in 1978.   At ¶ 38 of the Final PSIR, the reporting officer states that defendant "was charged and subsequently indicted in 1978/1979 for Taking Indecent Liberties with a Minor - 27 Counts (Paragraphs 61 and 62)."  Docket Entry #132, at ¶ 38. The PSIR reflects that such initial charge was dismissed in April 1980 .  Id., at

¶ 61. The PSIR further reports that defendant entered a plea of guilty on such charge on January 15, 1979. Defendant's specific objection is that he was not convicted of an offense in 1978. The Final PSIR does not contend, however, that he was convicted of any offense in 1978. Rather, it appears that defendant was convicted in January 1979 of the 1978 offense original charged in State v. Burgess, 78CRS25789. The PSIR goes on to reflect that this original charge was dismissed in April 1980.

The Final PSIR also reflects that the original charge in State v. Burgess, 78CRS25789, was dismissed and that 27 additional counts of "indictments" were then brought against him in the same case. The history of such charge is probative to this discussion. Defendant pled guilty to the original charge on January 16, 1979. According to the PSIR, sentencing on such conviction was continued to allow defendant to undergo treatment, but when he failed to appear (presumably for sentencing), the state brought 27 additional charges against him.[3] The PSIR goes on to reflect that the original charge was dismissed in April 1980, and such additional charges were disposed of by defendant pleading guilty to 13 counts, for which he received a total of 20 years imprisonment, with the state dismissing the remainder of the additional charges. Id., at ¶ 62.

---

[3]      The PSIR described these as "27 additional indictments."  This description is troubling as it appears that such further prosecution remained under the 78CRS25789 caption, and would assume that it was 27 "additional counts."

The PSIR further advises that after sentencing, defendant "[a]ppealed[4] to the US District Court" and that on May 10, 1984,  the "Judgments & convictions [were] overturned by the US District Court."  Id., at ¶ 62. In granting the writ, the district court held as follows:

> Petitioner clearly is a very disturbed man who desperately needs professional help. Assistant District Attorney Stroud is to be commended for the attention and concern which he displayed, at least until January 1980, for petitioner and the children involved in this case. Petitioner's constitutional rights, however, have been trampled, and this constitutional wrong, left unremedied, has especially unsalutary institutional consequences. This court, therefore, like the state courts, has a duty to remedy the wrong. The court sincerely hopes that the personnel in the District Attorney's office will again display the same good sense and concern they showed in 1978 and 1979, and, when again dealing with this case, will endeavor to acquire effective professional help for this petitioner.
>
> Based on the foregoing and on all the evidence, pleadings and briefs in the record, the court finds that petitioner was unconstitutionally convicted twice for the same crimes.
>
> IT IS THEREFORE ORDERED:
> 1.    That petitioner's claim for relief based on his claim that he was twice convicted for the same offenses is GRANTED.
> 2.    That petitioner's claim for relief from his sentences is ALLOWED, and the sentences are set aside.
> 3.    That petitioner, within thirty (30) days from the entry of this order, be released, or be sentenced **on the basis of his January 1979 conviction** and plea agreement. Petitioner shall be credited with all time already served.

---

[4]    This term appears to have been used in error as no "appeal" lies from state court to a federal trial court; rather, a state prisoner may contest his confinement by seeking a writ of habeas corpus under 28 U.S.C. § 2254.

Burgess v. Griffin, 585 F.Supp. 1564, 1573 (W.D.N.C. 1984), aff'd, 743 F.2d 1064 (4th Cir. 1984)(emphasis added).

In setting aside the convictions on the 13 counts, Judge McMillan specifically found that defendant had been previously convicted on the same charges when he entered a plea in January 1979 to the original charge.[5]  Whether the state made any effort to sentence defendant based on the original charge and conviction is not known to the undersigned, and according to the PSIR, the state had already dismissed such original charge in April 1980.  What is relevant, however, is that defendant, in securing *habeas corpus* relief from this court in 1984 represented that he had been previously convicted on the same offenses in 1979.

Thus to the extent defendant is now attempting to argue that he was never convicted in 1979,[6] the undersigned believes he is judicially estopped from making

---

[5]    In the text of the opinion, Judge McMillan refers to the date of "trial" and plea as January 15, 1979, rather than January 16, 1979, as referred to in the Final PSIR.

[6]    The court has read his objection in a light most favorable to him to be a 1979 conviction on a 1978 charge.

such an argument.[7]  In <u>King v. Herbert J. Thomas Mem. Hosp.</u>, 159 F.3d 192 (4th Cir. 1998), the Court of Appeals for the Fourth Circuit held, as follows:

> [j]udicial estoppel, an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding, is recognized to protect the integrity of the judicial system.  Acting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefitting itself by maintaining mutually inconsistent positions regarding a particular situation. As we have previously observed, the doctrine is invoked to prevent a party from "playing fast and loose with the courts," from "blowing hot and cold as the occasion demands," or from attempting "to mislead the [courts] to gain unfair advantage." As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court and with the recognition that each application must be decided upon its own specific facts and circumstances.

<u>Id.</u>, at 196 (citations omitted).  Because the law assumes "that there is only one truth about a given set of circumstances," <u>id.</u>, the Court of Appeals for the Fourth Circuit has adopted the doctrines of judicial estoppel and *quasi* estoppel to prevent litigants from benefitting from inconsistent factual positions, which not only make a mockery out of the courts, but would put in jeopardy the full faith and credit afforded to earlier decisions.

---

[7]     Inasmuch as sentencing is left to the sound discretion of the district court, the undersigned does not attempt to bind the district court in any manner in any predetermination of what will or will not be heard or considered.  Instead, the undersigned is simply tasked with determining what subpoenas should issue, which requires consideration of what is relevant and admissible at sentencing.

In a recent decision, the Court of Appeals for the Fourth Circuit in <u>National Union Fire Ins. Co. of Pittsburgh, Inc. v. Manufacturers and Traders Trust Co.</u>, 2005 WL 670617 (4th Cir. March 23, 2005), recited the elements of judicial estoppel:

> The doctrine of judicial estoppel has three necessary elements:
> (1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage.
> But "judicial estoppel will not be applied where the party's inconsistent positions resulted from inadvertence or mistake."

<u>Id.</u>, 2005 WL, at 2 (citing <u>King</u>, <u>supra</u>).  The Court of Appeals for the Second Circuit has further elaborated on the doctrine:

> First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. Preserving the sanctity of the oath prevents the perpetuation of untruths which damage public confidence in the integrity of the judicial system. Second, the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.

<u>Bates v. Long Island R.R. Co.</u>, 997 F. Supp. 1028, 1038 (2d Cir. 1993).  "The [judicial estoppel] doctrine is invoked to prevent a party from 'playing fast and loose with the courts,' from 'blowing hot and cold as the occasion demands,' or from attempting 'to mislead the courts to gain an unfair advantage.'"  <u>King</u>, <u>supra</u>, at 196.

The appellate court's description in <u>King</u> is precisely what defendant is attempting to accomplish in this case. Defendant is judicially estopped from asserting in this action that he was not convicted in Gaston County in 1979 on the original charge in the indictment inasmuch as he has previously represented to Judge McMillan that he was so convicted. Indeed, the previous conviction on the single count indicted was clearly the basis for Judge McMillan to overturn the conviction on the 27 count charge.

In summary, it would be fair for defendant to object and later argue that his conviction on the 27 count Gaston County indictment should not be considered in sentencing for two reasons:

(1)     such conviction was overturned by this court under Section 2254; and

(2)     such  same conduct is all subsumed in the 1979 conviction on the one count Gaston County indictment, which according to the PSIR was later dismissed in April 1980.

It would not be appropriate for defendant to object and later argue that he was not convicted in 1979 on the one count Gaston County indictment, as defendant has previously argued to this court that he was so convicted and is, therefore, judicially estopped.

Whether or not Judge McMillan "expunged" defendant's conviction on the 27 count indictment is of no moment. Assuming *arguendo* that he did so somewhere other than in the Order granting the writ,[8] there is no reason to believe that Judge McMillan would have also expunged the earlier 1979 one count conviction which was not then before him, but was the basis for finding that defendant had been twice placed in jeopardy. Indeed, Judge McMillan specifically provided the State of North Carolina an opportunity to resentence defendant on such conviction, see Burgess v. Griffin, supra, which would be inconsistent with an expungement of such underlying conviction.

Having carefully reviewed defendant's request for issuance of a subpoena to the Clerk of Gaston County, the undersigned cannot find that the Clerk's presence is necessary to an adequate defense or that requiring the Clerk to produce such documents under a subpoena is necessary. Further, the court finds that there is a much simpler and cost effective way to secure such documents, which is to simply make a request of the Clerk to provide a copy of file number 78CRS25789.[9] Stand by

---

[8] The Court of Appeals for the Fourth Circuit recognizes that a district court may order expungement as part of the relief available under Section 2254 and 2243. *Woodall v. Pettibone*, 465 F.2d 49, 53 (4th Cir.1972), cert. denied, 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973)

[9] The court assumes that this file is now in the N.C. Archives.

counsel can assist defendant in this procedural task, <u>United States v. Campbell</u>, <u>supra</u>, and counsel can then include any costs and time incurred in securing such file in his voucher. The undersigned will recommend that this request for issuance of a subpoena be denied.

### B. Registrar, Winthrop University, Rock Hill, SC

Defendant seeks to have issued a subpoena *duces tecum* to the Registrar of Winthrop University. Defendant seeks copies of all of his own academic records. In the Final PSIR , pretrial services reports, as follows:

> 79. According to the Registrar's Office of Winthrop University in Rock Hill, South Carolina, Burgess attended the university from the summer of 1969 until the summer of 1971. Records further reveal the defendant's school standing was rated as "poor." The defendant advised during the presentence interview that he was 12 credit hours short of graduating with a Political Science degree.

Final PSIR, at ¶ 79. The Final PSIR also mentions the school in relation to a previous objection lodged by defendant:

> RESPONSE: The information in Paragraphs 79 and 81 were [*sic*] provided by the Registrars' Office at Winthrop University and the University of South Carolina, respectively. Therefore, the probation officer maintains his position the information is correct, reliable and credible, pursuant to USSG §6A1.3, comment.

<u>Id.</u>, at p. 33. As a former student of Winthrop, defendant should have absolutely no problem in either requesting or receiving a copy of his transcript from such institution.

Further, he should, without much trouble, be able to secure a copy of any other records they might have maintained on him while a student at the institution.

Use of a subpoena to obtain one's own academic records does not appear to be an effective use of process nor does such issuance appear to be necessary to an adequate defense. Further, the court finds that there is a much simpler and cost effective way to secure such documents, which is to simply make a request of the Registrar to provide a certified copy of defendant's academic record. Stand by counsel can assist defendant in this procedural task, United States v. Campbell, supra, and counsel can then include any costs and time incurred in securing such documents in his voucher. The undersigned will recommend that this request for issuance of a subpoena be denied.

### C.    Clerk, U.S. District Court, 401 W. Trade St., Charlotte, NC

Defendant next seeks issuance of a subpoena duces tecum to the Clerk of this court for a copy of his case file in Burgess v. Griffin, supra. While there does not appear to be any meat left on that bone due to the doctrine of judicial estoppel, there are absolutely no impediments to defendant receiving a copy of such file. While there is no expungement contained in the Order granting the writ, the court is curious as to whether any order of expungement was later filed. There is, however, no need for the Clerk of this court to subpoena himself, as stand by counsel can simply make a formal

request that the Clerk retrieve such file (or a copy thereof) from the National Archives, *true teste* such copy, and provide it to defense counsel. The undersigned will recommend that this request for issuance of a subpoena be denied.

### D.    Attorney James Kilbourne, Jr.

In this request, defendant seeks a subpoena duces tecum directed to James Kilbourne, Jr., who is a criminal attorney and a member of the Bar of this court. Defendant seeks "copies of any search and/or seizure warrants obtained by you or your staff on your efforts from Henderson County, N.C. concerning Albert C. Burgess, Jr., dated March 2008." Docket Entry # 141, at ¶ 4. While defendant does not so state, the court assumes that Mr. Kilbourne at some point represented defendant in state court proceedings in Henderson County. There is, however, no need for the Clerk of this court to subpoena Mr. Kilbourne as stand by counsel can simply make a formal request on defendant's behalf that a copy of Mr. Kilbourne's file be provided to defendant (assuming that an attorney-client relationship existed between them), and that Mr. Kilbourne provide an affidavit that such constitutes defendant's complete file. The undersigned will recommend that this request for issuance of a subpoena be denied.

**IV. Defendant's Pro Se "Request for Subpoena Duces Tecum - Rule 17(A)(+(b) FRCrP; Request to the Court" (#150)**[10]

### A. Librarian, Ms. Janet Meyer, S.C. Supreme Court Library

In this request, defendant seeks issuance of a subpoena duces tecum to the librarian of the South Carolina Supreme Court. Defendant asks that she produce copies of statutes from 1971, specifically, Sections 16-413.1 and 16-555.1 of the South Carolina Code. Defendant also seeks statutes that indicate where these code sections are felonies or misdemeanors. This is precisely the type of legal research assistance stand by counsel can provide to defendant and there is absolutely no need to employ federal process to secure what is basic legal research. The undersigned will recommend that this request for issuance of a subpoena be denied.

### B. Clerk of Court- Superior-Criminal Henderson County Courthouse, Grove St., Hendersonville, NC 28793

In this request, defendants seeks issuance of a subpoena duces tecum as to any criminal charges filed against him in 2008 and that were dismissed in 2009. Having carefully reviewed defendant's request for issuance of a subpoena to the Clerk of Henderson County, the undersigned cannot find that the Clerk's presence is necessary

---

[10] The undersigned does not reach other parts of this motion that seek "Relief From Waiver PSIR." In addition, other motions are contained in such motion, but are not contained in the caption, including *inter alia* a Motion to Compel.

to an adequate defense or that requiring the Clerk to produce such documents under a subpoena is necessary. Further, the court finds that there is a much simpler and cost effective way to secure such documents, which is for stand by counsel to simply make a request of the Clerk to provide a copy of any such file. Stand by counsel can assist defendant in this procedural task, United States v. Campbell, supra, and counsel can then include any costs and time incurred in securing such file in his voucher. The undersigned will recommend that this request for issuance of a subpoena be denied.

### C. David I. Bruck, Washington and Lee University and/or David Belser

In this request, defendant seeks issuance of a subpoena as to either David I. Bruck or David Belser. Professor Bruck is clinical professor and the Director of the Virginia Capital Case Clearing House at Washington and Lee, and Mr. Belser is a member of the Bar of this court. Defendant states, as follows:

> If an expert is needed to assess the influence of the S.C. Supreme Court's ruling in the case of State vs. William A. Clinkscales, Jr., on overturning my S.C. convictions collaterally.
> Either or both should be subpoenaed for my sentencing hearing.

Docket Entry #150, at p.3. The undersigned deems this a request for appointment of a legal expert to give testimony on defendant's behalf at sentencing. Apparently, defendant believes that the alleged overturning of a conviction as to a co-defendant has, somehow, overturned his own conviction collaterally. A search of Westlaw

reveals no reported cases where a legal expert was appointed to provide testimony at sentencing. In this case, defendant can (in the sound discretion of the district court) make his argument that a conviction relied on in the presentence report has been "collaterally overturned," and the district court can apply its own legal expertise to such argument.[11] The undersigned will recommend that this request for issuance of a subpoena be denied.

## RECOMMENDATION

**IT IS RESPECTFULLY RECOMMENDED** that defendant's

(1)    Pro Se "Request for Subpoena Duces Tecum FRCrP-17(c)-At Government Expense <u>Ex</u> <u>Parte</u>" (#141) be **DENIED** in its entirety and that stand by counsel be instructed to secure such documents in the manner above discussed; and

(2)    Pro Se "Request for Subpoena Duces Tecum -Rule 17(A)(+(b) FRCrP; Request to the Court" (#150) be **DENIED** only as to the requests for

---

[11] "In our legal system, purely legal questions . . . is exclusively the domain of the judge. Accordingly, expert testimony on such purely legal issues is rarely admissible." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997. *See also Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir.1986)

issuance of subpoenas therein contained and that stand by counsel be instructed to secure such documents in the manner above discussed.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

**Inasmuch as this recommendation may require *stand-by* counsel to accomplish a number of tasks, the Clerk of this court is respectfully requested to advise Mr. Devereux of the filing of this recommendation by telephone in addition to service through ECF.**

Signed: July 16, 2010

Dennis L. Howell
United States Magistrate Judge